IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

PORTLAND DIVISION

WILLIAM C. EDMONS,                                              Civ. No. 09-987-AC

                              Plaintiff,                        OPINION AND
                                                                ORDER
            v.

HOME DEPOT, U.S.A., INC.,

                              Defendant.

_____

ACOSTA, Magistrate Judge:

*Introduction*

            Plaintiff William C. Edmons ("Edmons") purchased a ladder from Defendant Home Depot

U.S.A., Inc. ("Home Depot").  Edmons alleges that, while using the Krause Multimatic Ladder ("the

ladder"), he fell and, as a result of the ladder's defective design, sustained serious injuries.  Edmons

asserts a claim of strict products liability against Home Depot, as the retail seller of the ladder.

Home Depot moves to both strike the supplementary report submitted by Edmons's expert witness and for summary judgment for failure to establish defective design and causation. For the reasons set forth below, Home Depot's motions to strike and for summary judgment are granted in their entirety.

*Factual Background*

Edmons submitted the expert report of Keith M. Cronrath of Cronrath & Tompkins, Forensic Engineers, P.S.[1] ("Cronrath") to opposing counsel on April 28, 2010. (Ewing Declaration ("Decl.") Exhibit ("Ex.") 3.) The report states that Cronrath reviewed both "a written report, photographs, and video regarding the incident ladder prepared by Talbott Associates, Inc. of Portland, Oregon" ("the Talbott report") and Edmons's deposition. *Id*. at 2. In his report, Cronrath summarized Edmons's deposition testimony and explained that after reviewing the Talbott report, he "ha[s] determined that there are several defects that could have caused or contributed to the accident that Mr. Edmons was involved in." *Id*. at 3-5.

In his report, Cronrath describes each identified defect and a potential alternative to remedy each defect:

> 1.  Defect: "the wire release bar can be pulled in and remain in next to the rung when the locks are actually in the unlocked position," leading a user to believe that the locks are in place when they are not. *Id*.
> Alternative: "The design of the wire release bar should have been such that when the locking bolts were in the unlocked position the wire release bar is always held out away from the rung in a clearly identifiable unlocked position and if the wire release bar was pushed back against the rung (as shown in the Talbott Associates video) and the lock bolts are unlocked, the wire release bar should spring back out to indicate that the lock bolts were in the unlocked position." *Id.* at 5-6.

---

[1] The report appears to be authored by both Cronrath and Larry L. Tompkins. However, both parties refer to it as if it was authored by Cronrath alone and the court will do the same.

2.    Defect: "the redlock bolts always give an indicator of the color red regardless whether they are in the locked or unlocked position." *Id*. at 6.

Alternative: "to have the red exposed only in one of the positions of the lock and in the other position there is either a different color or a complete absence of red." *Id.*

3.    Defect: "a lack of instruction on the warning labels to clearly instruct the user as to what position the wire release bar needs to be in when the joint is locked." *Id.*

Alternative: the label "would be less confusing if it said 'To Lock: Stop holding the bar before the lock gets to the desired lock location . . . .'" *Id.* (emphasis in original).

4.    Defect: the ladder legs "can be folded out into a position that is over center or past the lock position," as shown in the Talbott report. *Id.*

Alternative: "The ladder should be designed so that when you unfold the ladder legs for the step ladder position or A-frame position (as is shown in the Talbott Associates video and as Mr. Edmons said he did at the time of the accident) the locks should be designed so that they cannot go directly past the lock position (without ever being locked) and give the impression that they are locked. The ladder should be designed to snap into the lock position before it goes over center or as it comes back from the over center position." *Id.* at 7.

5.    Defect:[2] "a lack of warning that the ladder joints can go past the lock position (such as shown in the Talbott Associates video and as described by Mr. Edmons) and go into an always unlocked position that will not snap into the lock position as previously discussed in defect number four." *Id.*

Alternative: if the defect "could not be designed out, then proper engineering design safety protocol would be to either guard against the defect (which is probably

---

[2]    This alleged defect is not actionable as a matter of law. Oregon law recognizes strict liability where a manufacturing defect is present, or where a product presents an unknown danger that must be addressed by instruction as to its proper and safe use. *See Fireman's Fund Ins. Co. v. PECO, Inc.*, No. 94-35000, 1995 U.S. App. LEXIS 21043, at *3 ("'Unreasonably dangerous defects in products come from two principal sources: (1) mismanufacture and (2) faulty design, including failure to warn as a design defect.'" (quoting *Harris v. Northwest Natural Gas Co.*, 284 Or. 571, 576, 588 P.2d 18 (1978)). Here, however, Edmons alleges a failure to warn *of* a design defect, rather than a failure to warn *as a* design defect. Oregon courts have been clear that a manufacturer cannot avoid liability by warning of a design defect. *See Glover v. BIC Corp.*, 987 F.2d 1410, 1415 (9th Cir. 1983) ("Although an adequate warning will prevent the reliance on a theory of strict liability in a failure to warn defect case, such a warning will not make safe a product with a manufacturing defect as alleged in this case."). Thus, an allegation that a manufacturer or seller must warn of a manufacturing defect is inapposite and cannot support a finding of liability. Here, Defect Five bases liability on a failure to warn of Defect Four, a claim that cannot stand under Oregon law.

not practical in this instance) or to warn of the defect or the danger of this condition if it cannot be deisnged out or guaded." *Id.*

Cronrath wrote that "[a]ny or all of the five above named and discussed defects in the ladder could have caused or contributed to this accident where Mr. Edmons fell when the hinges collapsed." *Id.* He also wrote that, to the extent Edmons's testimony is credible, "the defects noted above caused or contributed to the collapse of the ladder at the time Mr. Edmons was using it." *Id.* at 8.

Cronrath subsequently testified at deposition that he based his expert report on photos and videos and not on a physical inspection of the ladder. (Ewing Decl., Ex. 4 at 2.) He testified that he had no experience in the design of "an articulating ladder" or "a hinge lock mechanism for an articulating ladder[.]" *Id.* at 2-3. Cronrath admitted that he did not create a diagram or a prototype of his alternative designs, explaining: "I believe I can identify when something is defective without having an alternative design . . . . I haven't identified a specific different design that you can use. What I've identified is that I believe the design that they have is defective for the reasons that I've given." *Id.* at 10. Cronrath argued that the simplicity of the design and proposed alternatives obviated the need for a prototype or diagram, or anything more than a conceptual description of the proposed alternative. *Id.* at 12. Cronrath also testified that "all of [his] opinions in this case [were] the product of litigation." *Id.* at 20.

Cronrath's curriculum vitae states that he received an Applied Science degree from Spokane Community College in 1975 and a Bachelor of Science in Mechanical Engineering from Oregon State University in 1983. Cronrath has authored or co-authored several articles and conducted "special studies" on a wide variety of topics in engineering, the bulk of which concern automobile accidents and the techniques of reconstruction. Cronrath's materials also indicate that he has given

testimony in approximately thirty court cases.

In his response materials, Edmons includes a "Handwritten Supplemental Report of Keith Cronrath," the handwritten notes of Cronrath upon inspection of the ladder in question on June 11, 2010. The notes primarily address the ease with which a user of the ladder could inadvertently move the release bar and release all of the locks from their locked position. Edmons also submits a supplementary declaration by Cronrath in which Cronrath posits three possible scenarios giving rise to the accident in question: First, Edmons may have been careless and failed to ensure that the locking pins were in the locked position. Second, unbeknownst to Edmons, the locking mechanism may have come unlocked. Third, Edmons may have been mistaken in thinking the ladder was locked when it was not, despite a reasonable review of the ladder's instructions and warnings.

*Legal Standard*

Federal Rule of Evidence ("FRE") 702 provides that expert testimony may be presented where "scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue[.]" FED. R. EVID. 702. An expert must be "qualified . . . by knowledge, skill, experience, training, or education" and may testify "in the form of an opinion or otherwise, if (1) the testimony is based upon sufficient facts or data, (2) the testimony is the product of reliable principles and methods, and (3) the witness has applied the principles and methods reliably to the facts of the case." *Id.*

In *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579 (1993) ("*Daubert I*"), the Supreme Court clarified the role of the district court in the admission of expert testimony. Referring specifically to scientific evidence, the Court wrote that "under the Rules the trial judge must ensure that any and all scientific testimony or evidence admitted is not only relevant, but reliable." *Id.* at

589.  *Daubert I* set forth factors to guide the court in determining whether expert testimony is

admissible:

> District court judges are to consider not only (1) whether the method has gained
> general acceptance in the relevant scientific community, but also (2) whether the
> method has been peer-reviewed, (3) whether the method "can be (and has been)
> tested," and (4) whether there is a "known or potential rate of error."

*Lust v. Merrell Dow Pharmaceuticals, Inc.*, 89 F.3d 594, 597 (9th Cir. 1996) (quoting *Daubert v.

Merrell Dow Pharmaceuticals, Inc.*, 43 F.3d 1311, 1317 n.4 (9th Cir. 1995) ("*Daubert II*") (on

remand from *Daubert I*)).  *Daubert I* was a notable opinion, in part, because it departed from a

previously articulated standard, as first stated in *Frye v. United States*, 293 F. 1013, 1014 (D.C. Cir.

1923), which provided that an expert's testimony "is inadmissible if it is based on a method that has

not gained 'general acceptance' in the relevant scientific community."  *Lust*, 89 F.3d at 597 (citing

*Daubert I*).  The general acceptance standard was thus abandoned.

Courts have since interpreted the *Daubert I* inquiry more flexibly.  No single factor is

dispositive but, where one factor is absent, other factors may be applied more stringently.  For

example:  "That the expert failed to subject his method to peer-review and to develop his opinion

outside the litigation is not dispositive, but if these guarantees of reliability are not satisfied, the

expert 'must explain precisely how [he] went about reaching [his] conclusions and point to some

objective source . . . to show that [he has] followed the scientific method, as it is practiced by (at

least) a recognized minority of scientists in [his] field.'"  *Lust*, 89 F.3d at 597 (quoting *Daubert II*)

(brackets in original).  In *Kumho Tire Co., Ltd. v. Carmichael*, 526 U.S. 137, 147 (1999), the Court

explicitly extended its ruling to non-scientific evidence, noting that the language of FRE 702 "makes

no relevant distinction between 'scientific' knowledge and 'technical' or 'other specialized'

knowledge." Thus, "as a matter of language, the Rule applies its reliability standard to all 'scientific,' 'technical,' or 'other specialized' matters within its scope." *Id.*

*Discussion*

I.   Admissibility

 *A. Supplemental Submissions*

Home Depot moves to strike the supplementary evidence attached to Edmons's response memorandum, specifically Cronrath's Declaration and handwritten notes. Home Depot argues that these submissions are untimely as they were submitted following the close of discovery and thus run afoul of Federal Rule of Civil Procedure ("Rule") 37. Home Depot argues that this untimeliness is prejudicial because discovery is closed and Home Depot is not able to depose Cronrath on these new evidentiary developments.

On March 22, 2010, the court ordered production of Edmons's expert disclosure report by March 31, 2010. This date was subsequently extended to May 10, 2010. After this, the date was not explicitly reset, but a series of docket entries by the court indicate that the deadline for completion of expert depositions was repeatedly extended. An entry dated July 20, 2010, indicates that the deadline for completion of expert depositions was July 28, 2010. No further extension of discovery deadlines is reflected on the docket sheet. Thus, Edmons's attempt to supplement his expert's testimony in his opposition materials, filed on October 4, 2010, was untimely.

Rule 37(c)(1) states:

> If a party fails to provide information or identify a witness as required by Rule 26(a) or (e), the party is not allowed to use that information or witness to supply evidence on a motion, at a hearing, or at a trial, unless the failure was substantially justified or is harmless.

OPINION AND ORDER      7        {KPR}

FED. R. CIV. P. 37(c)(1). Rule 26(a)(2) provides that expert reports must be submitted pursuant to the court's scheduling orders. FED. R. CIV. P. 26(a)(2). Untimely submissions may be excused their untimeliness "if the failure was substantially justified or is harmless." *Lanard Toys, Ltd. v. Novelty, Inc.*, No. 08-55795, 2010 U.S. App. LEXIS 7585, at *19 (9th Cir. Apr. 13, 2010) (citing *Yeti by Molly, Ltd. v. Deckers Outdoor Corp.*, 259 F.3d 1101, 1106-07 (9th Cir. 2001)). Factors the court may consider in its determination are: "(1) prejudice or surprise to the party against whom the evidence is offered; (2) the ability of that party to cure the prejudice; (3) the likelihood of disruption of the trial; and (4) bad faith or willfulness involved in not timely disclosing the evidence." *Id.* at *20.

These submission should be stricken for two reasons. First, Edmons does not argue that this untimeliness should be excused by good cause. Second, supplementation of expert testimony at this stage will prejudice Home Depot because, first, it already deposed Cronrath prior to the submission of the supplemental report and, second, the supplemental report gives Edmons the opportunity to address the weaknesses identified by Home Depot in its initial summary judgment brief. For these reasons, the supplemental submissions are stricken.

That said, in this case, the supplementation will not aid Edmons in proving his case. Neither the handwritten notes nor the supplemental declaration contain information unlike that contained in the expert report as originally filed. They merely seek to clarify Cronrath's analysis as to the cause of the accident. Even if they were admitted, the supplemental submissions would not cure the defects identified by Home Depot.

B. *Hearsay*

Home Depot also moves to strike the Talbott report as inadmissible hearsay and argues that,

although an expert may base his or her conclusion on facts or data reasonably relied upon in the particular field, the expert may not submit that basis to the jury where it is otherwise inadmissible. Home Depot notes that the Talbott report is not currently before the court and, thus, cannot be evaluated for purposes of this decision.

An expert may rely on information if it is "'of a type reasonably relied upon by experts in the particular field in forming opinions or inferences upon the subject,' Fed. R. Evid. 703, and the probative value of the underlying data outweigh[s] any prejudicial effect it might have had on the jury." *United States v. Jawara*, 462 F.3d 1173, 1191 (9th Cir. 2006) (citing *Turner v. Burlington Northern Santa Fe Railroad Co.*, 338 F.3d 1058, 1061 (9th Cir. 2003)). Here, the court has no basis upon which to conclude that the Talbott report meets these requirements for admission, chiefly because the report is not before the court for review. Furthermore, Edmons has not established, nor has Cronrath stated, that the Talbott report is the type of information reasonably relied upon by mechanical engineers reaching conclusions under circumstances similar to those in the present case. The court is unable to admit the Talbott report because it is not currently before it and, thus, the court cannot evalute its admissibility.

II.    Expert Testimony

Home Depot moves to strike the whole of Cronrath's testimony, including those portions timely submitted, on three grounds. First, Cronrath is not qualified to give expert testimony on ladder design. Second, Cronrath did not test any of the alternative ladder designs he claims would remedy the defects in the ladder. Third, Cronrath has no basis upon which to conclude that the defects he identified actually caused Edmons's accident.

//

A.        *Cronrath Insufficiently Qualified*

Home Depot argues that Cronrath is unqualified to testify in this matter because he has no experience designing ladders or warning labels for ladders; has done limited research on the topic; has never been associated with the ANSI committee on ladders; and had not encountered the ladder in question prior to his involvement in this case.  Edmons responds that Cronrath is, in fact, sufficiently experienced and directs the court's attention to his credentials.  Edmons also explains that, although he did not inspect the ladder prior to the date of his deposition, Cronrath previously reviewed the Talbott report which includes examination and testing of the ladder and depicts an experience similar to Edmons's.  Thus, Edmons argues, Cronrath's inspection of the ladder was merely a confirmation of the results of the Talbott report.

The court notes two things.  First, Edmons does not explain how Cronrath's credentials demonstrate his expertise in the area of ladder engineering and design, but merely refers the court to his curriculum vitae.  Second, Edmons's assertion that Cronrath's review of the Talbott report resolves the question of his qualifications is not well taken.  In the court's view, that a proffered expert witness has reviewed the work of an expert in a particular field prior to testifying does not render the proffered expert witness qualified to so testify.

Furthermore, there is a presumption that where an expert's report is prepared for litigation, "the party proffering it must come forward with other objective, verifiable evidence that the testimony is based on 'scientifically valid principles.'"  *Daubert II* at 1317-18 (internal citations omitted).  Although "[s]uch an expert is not [to] be accorded a presumption of *unreliability*, [] the party proffering the expert must show some objective proof – such as the expert's extensive familiarity with the particular type of machine in question . . . ."  *Johnson v. Manitowoc Boom*

OPINION AND ORDER                              10                                    {KPR}

*Trucks, Inc.*, 484 F.3d 426, 435 (6th Cir. 2007) (citing *Daubert II*).  In other words, where an expert "is a 'quintessential expert for hire,' then it seems well within a trial judge's discretion to apply the *Daubert* factors with greater rigor."  *Id.*

Here, Cronrath has no special expertise in the area of ladders and frequently acts as an expert for purposes of litigation.  These facts heighten the need for evidence that substantiates his expertise and the scientific basis of his testimony.  No such admissible evidence has been offered by Edmons.  Thus, Edmons has not met his burden to establish that his expert, Cronrath, is qualified to testify in this matter.

      B.    *Alternative Designs Not Tested*

Where defects in product design are alleged, the plaintiff must present alternative designs and, for the most part, these designs must be tested.  The Oregon Supreme Court has held that "when a design feature of a manufactured product creates a risk of injury, the test for strict liability in tort, if that injury results, is whether 'a reasonably prudent manufacturer would have so designed and sold the article in question had he known of the risk involved which injured plaintiff.'"  *Wilson v. Piper Aircraft Corp.*, 282 Or. 61, 66, 577 P.2d 1322 (1978) (quoting *Phillips v. Kimwood Machine Co.*, 269 Or. 485, 494, 525 P.2d 1033 (1974)).  This inquiry considers, in part, whether an alternative design would have ameliorated the risk such that the product retained its usefulness but was not rendered impracticable in the marketplace.

> In other words, the court is to determine, and to weigh in the balance, whether the proposed alternative design has been shown to be practicable.  The trial court should not permit an allegation of design defect to go to the jury unless there is sufficient evidence upon which to make this determination.

*Wilson*, 282 Or. at 68.  That said, if a product's design is sufficiently straightforward, the court may

itself make the determination whether an alternative design was feasible. *Id.* In the balance of cases, however, reliable evidence (like an expert's testimony) is required on this point. *See id.* at 69 ("In other instances, however, the question of practicability cannot be properly weighed solely on the basis of inference and common knowledge.").

Home Depot argues that, although Cronrath identified five alleged defects in the ladder, he failed to develop or test alternative designs that would remedy the alleged defect. This, Home Depot argues, fails to meet the requirements for an expert's testimony with regard to strict liability based on design defects. Furthermore, without the expert's own research and testing or peer review, or some other indicator of reliability, the expert's testimony is not admissible. Edmons responds that Cronrath's reliance on the Talbott report provides the necessary technical underpinnings for Cronrath's expert testimony. Referring to Home Depot's argument that the "testability" of the expert's theory is the most important factor in determining admissibility, Edmons argues that the Talbott report will provide an objective demonstration of the ladder's operation and thus satisfy the "testability" requirement.

Even assuming the Talbott report is admissible as substantive evidence, it is not clear that it helps Edmons meet this burden. First, the Talbott report is not currently before the court and so the court is unable to evaluate its content. Second, Edmons has not established that the Talbott report was prepared by persons with expertise in this area sufficient to qualify the report or its authors as sufficiently qualified. Third, there is nothing in Cronrath's testimony that sufficiently describes the testing Talbott conducted or the results of that testing.

Further, at deposition, Cronrath repeatedly stated that his verbal descriptions of the defects and the manner in which they could be corrected were sufficient, and that production of a diagram

or a prototype was unnecessary.  As Home Depot points out, this approach was previously rejected

by this court in *Cole v. Builders Square, Inc.*, Civ. No. 99-729-PA (D. Or. May 7, 2001), a similar

case wherein Cronrath testified about another allegedly defective ladder.  Judge Panner wrote:

> [P]laintiff's expert stated that he had not performed any testing on his alternative
> design, including his working model, to determine whether the alternative design was
> in fact safer than defendant's design.  Cronrath's testimony about a safer alternative
> design is purely speculative without such testing, and is insufficient evidence of a
> safer alternative design.

*Id.* at *12.  Here, again, Cronrath's report and testimony are insufficient evidence of a safer

alternative design and cannot meet Edmons's burden at summary judgment.

    C.    *Causation*

To establish causation, "'the plaintiff in a strict liability case is required to establish that such

condition proximately caused his injuries or damages.'"  *Crosswhite v. Jumpking, Inc.*, 411 F. Supp.

2d 1228, 1235 (D. Or. 2006) (quoting *Gilmour v. Norris Paint & Varnish Co., Inc.*, 52 Or. App. 179,

184, 627 P.2d 1288 (1981)).  This requires that a plaintiff "'introduce evidence which affords a

reasonable basis for the conclusion that it is more likely than not that the conduct of the defendant

was a substantial factor in the result.  A mere possibility of such causation is not enough . . . .'"  *Hall

v. Baxter Healthcare Corp.*, 947 F. Supp. 1387, 1298 (D. Or. 1996) (quoting *Griffin v. K.E. McKay's

Market of Coos Bay, Inc.*, 125 Or. App. 448, 451-52, 865 P.2d 1320 (1993)).

Home Depot argues that Edmons cannot establish causation because Cronrath did not testify

that, to a reasonable degree of engineering certainty, the alleged defects caused Edmons's accident.

In fact, Cronrath testified that there were three possible causes for the accident, one of which was

Edmons's own carelessness.  Edmons responds that Cronrath did not testify to a reasonable

engineering certainty because Home Depot failed to question him about such a certainty at

deposition.  Home Depot points out that Cronrath did not claim a reasonable degree of engineering certainty in his report.

Home Depot is correct that neither Cronrath's expert report nor his deposition testimony claims a reasonable degree of engineering certainty that the alleged defects caused Edmons's injuries.  His declaration does speak to the issue but, again, he cites three possible causes for the accident, and Cronrath never concludes that the defect was the cause of Edmons's injury.  This is insufficient to meet the standard that, more likely than not, the defendant's conduct was a substantial factor in the resulting injury.   Edmons has simply failed to provide an objective evidentiary basis for the causation element of this products liability claim.

III.    Summary Judgment

Home Depot seeks summary judgment on all claims because Edmons can neither establish the existence of a defect nor that such a defect caused his fall and resulting injury.  The court agrees that, in the absence of admissible expert testimony or any other objective sources of proof, Edmons product liability claims must be dismissed on summary judgment.

*Conclusion*

For the reasons stated, Home Depot's motion to strike and for summary judgment (#26) is GRANTED in its entirety.

IT IS SO ORDERED.

DATED this 14th day of January, 2011.


        _____/s/ John V. Acosta_____
            JOHN V. ACOSTA
        United States Magistrate Judge

OPINION AND ORDER                    14                           {KPR}